CONGRESS FINANCIAL COR-
PORATION

v.

STERLING COIN-OP. MACHINERY
CORPORATION et al.

Civ. A. No. 40892.

United States District Court,
E. D. Pennsylvania.

Jan. 6, 1970.

Edward Greer, Mesirov, Gelman, Jaffe & Levin, Philadelphia, Pa., for plaintiff.

Richard J. Gordon, Leonard J. Cook, Dilworth, Paxson, Kalish & Levy, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

FULLAM, District Judge.

In October of 1962, plaintiff entered into a written agreement with the defendant Sterling Coin-Op. Machinery Corporation for the financing of installment sales of dry-cleaning equipment by the defendant to its retail customers. Under the terms of this agreement, the defendant Sterling Coin-Op. Machinery Corporation guaranteed in extremely broad terms, the payment of all such installment contracts by the debtors, and agreed unconditionally to make good the remaining balance due on any account in default, upon 30 days notice. By separate written agreements, the remaining defendants unconditionally guaranteed the obligations of Sterling Coin-Op. Machinery Corporation in its transactions with the plaintiff.

On or about October 22, 1962, the defendant Sterling Coin-Op. Machinery Corporation entered into a conditional sales contract with Frederick E. Mueller and Marguerite Mueller for the sale of certain dry-cleaning equipment for the total sum of $28,051.33, and assigned this obligation to the plaintiff pursuant to the above-mentioned agreement. The assignment contained the following language:

"[Sterling Coin-Op. Machinery Corporation] warrants compliance with

all filing and recording requirements, hereby agreeing that any filing or recording or renewals thereof which assignee may undertake at undersigned's request, or otherwise, shall be at undersigned's expense and without responsibility whatsoever on assignee's part for any omission or invalid accomplishment thereof, whether through assignee's failure, neglect or for any reason, and such omission or invalid accomplishment shall not relieve the undersigned of any responsibility to said assignee. . . . "

The conditional sales contract contained the following language:

"If a note is given in connection with this transaction, such note is evidence of indebtedness, and is not given in payment."

Simultaneously with the execution of the conditional sales contract, a judgment note in the sum of $28,051.33 was duly executed by Mr. and Mrs. Mueller, payable to Sterling Coin-Op. Machinery Corporation. The note contained the following language:

"This note evidences indebtedness under a conditional sales contract, executed by the maker hereof, dated October 22, 1962."

The note was duly endorsed to the plaintiff by the Sterling Coin-Op. Machinery Corporation with recourse.

All of the papers, i. e., the executed conditional sales contract, the executed assignment of the sales contract, and the endorsed judgment note, were forwarded to the plaintiff under the same cover, on or about October 24, 1962. In the covering letter, the plaintiff was requested to "record the judgment note in the appropriate county and advise us when this has been done." However, under the terms of the judgment note, judgment could be confessed only "if this note or any installment thereof is not paid when due."

The plaintiff did not attempt to confess judgment on the note, but retained the same in its files. On or about March 10, 1963, the debtors defaulted in the payment of monthly installments. Both the plaintiff and the defendants attempted from time to time to persuade the debtors to pay the installments as they fell due; although some additional payments were made, the debtors were continually in default from and after March 10, 1963.

In October of 1962, when the note was executed, the debtors were the owners of real estate in which they had an equity of approximately $25,000. In December of 1963, they conveyed this real estate. The defendants did not learn that the judgment note had not been entered of record until late August of 1964. Judgment was entered against the Muellers by confession on the note on September 14, 1964, but by that time they were substantially without assets. Litigation was instituted in an attempt to set aside the conveyance of the Muellers' real estate. By agreement, acquiesced in by all of the parties to this litigation, that action was settled, and the Muellers were discharged from all further liability in connection with the transaction, for the sum of $6,500. This payment, together with other payments which had been made previously by the Muellers, left an outstanding balance on the original transaction of $12,517.73, claimed by the plaintiff in this action. In connection with the litigation, the defendants expended the sum of $1,900.50 in legal fees. It is the position of the defendants that the plaintiff's failure to enter judgment upon the note, and the resultant loss of a potential lien against the Muellers' real estate, relieves all of the defendants of their obligations under the guarantees, and that the plaintiff is indebted to the defendants for the $1,900.50 defendants were obliged to spend in order to collect the $6,500 payment from the Muellers' real estate.

The written contracts between the parties recite that they are to be interpreted under the laws of the State of New York, but neither side has suggested that New York law differs from that of Pennsylvania in any material respect. It is my opinion that the plaintiff is en-

titled to recover the balance claimed, and that the defendants' counterclaim should be dismissed.

Unquestionably, the broad language of the guarantee agreements would compel the entry of judgment in favor of the plaintiff, unless, through its handling of the judgment note, plaintiff breached its duty to the defendants and thereby discharged the defendants from their obligations. The defendants rely upon the common-law principle, codified in Article 9 of the Uniform Commercial Code, that it is the duty of a pledgee of collateral to use reasonable diligence to preserve the same; and that, where the collateral consists of claims against third parties, this includes the obligation of using reasonable diligence to preserve and collect the claims, or enable the pledgor to do so. Pa.Stat.Ann. 12A, § 9–207; ALI Restatement Security §§ 17 and 18.

There are several reasons for rejecting this argument. In the first place, construing all of the documents together, it seems reasonably clear that the parties intended the disclaimer set forth in the assignment (". . . without responsibility whatsoever on assignee's part for any omission or invalid accomplishment thereof, whether through assignee's failure, neglect or for any reason, and such omission or invalid accomplishment shall not relieve the undersigned of any responsibility to said assignee. . . .") to apply to the entire transaction, including the judgment note; and this kind of disclaimer is expressly authorized by section 9–207(1) of the Commercial Code ("In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties *unless otherwise agreed.*")

In the second place, the plaintiff never assumed any obligation to record the judgment note. The defendants requested plaintiff to do so, in the forwarding letter, but plaintiff never agreed to do so, nor did plaintiff ever advise or otherwise indicate to the defendants that it had done so or would do so.

Moreover, the defense argument assumes that the inability to satisfy the underlying debt out of the real property of the debtors was solely due to the fault of the plaintiff. But the evidence establishes that both sides were at fault. When the note was originally forwarded to the plaintiff, it would not have been possible, legally, to enter judgment upon it, since no default had yet occurred. Indeed, if the plaintiff had complied with the vague request to "record the judgment note in the appropriate county" the net result might very well have been to impair the collateral, since such an attempt might have exhausted the warrant of attorney. Cf., Scott Factors, Inc. v. Hartley, 425 Pa. 290, 228 A.2d 887 (1967); American Heating Co. v. Persell, 182 Pa.Super. 606, 127 A.2d 764 (1956); Commonwealth v. Massi, 225 Pa. 548, 74 A. 419 (1909); *see also* Lancaster Housing Authority v. Gardner, 434 Pa. 467, 255 A.2d 539 (1969) (dissenting opinion). Be that as it may, it is quite clear that there could be no obligation to "record" the note until default occurred in March of 1963. As of that time, the defendants had no reason to believe that the note had been entered. The defendants' request to be advised when the note was recorded had never been complied with. It is clear that both parties thereafter were attempting to collect the debt, for their mutual benefit. Under the circumstances, the defendants were at least as negligent as the plaintiff in failing to take steps to verify the existence of the judgment lien.

And finally, there is no evidence in the record to support a finding as to what loss, if any, was sustained by the defendants by reason of the failure to enter judgment on the note in March of 1963. The record discloses that, in October of 1962, the debtors had an equity of about $25,000; and that the debtors conveyed their property in December of 1963. There is no evidence as to what the debtors' equity may have been in March of 1963, or at any time thereafter.

For all of these reasons, I have concluded that the plaintiff is entitled to recover, and that the defendants have not made out a case on their counterclaim.